**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

MEDICAL ADVOCATES FOR
HEALTHY AIR; SIERRA CLUB,

        Petitioners,

  v.

U.S. ENVIRONMENTAL PROTECTION
AGENCY; LISA P. JACKSON,
Administrator, U.S. Environmental
Protection Agency; JARED
BLUMENFELD, Regional Administrator,
Region IX, U.S. Environmental Protection
Agency,

        Respondents,

SAN JOAQUIN VALLEY UNIFIED AIR
POLLUTION CONTROL DISTRICT,

        Respondent - Intervenor,

SOUTH COAST AIR QUALITY
MANAGEMENT DISTRICT,

        Respondent - Intervenor.

No. 12-70630

MEMORANDUM[*]

---

    [*]    This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

On Petition for Review of an Order of the
Environmental Protection Agency

Argued and Submitted May 11, 2016
San Francisco, California

Before: FARRIS, O'SCANNLAIN, and CHRISTEN, Circuit Judges.

Petitioners seek review of a final EPA action finding two areas in California did not attain the revoked one-hour ozone pollution standard by the applicable deadline. EPA issued this rule pursuant to its general rulemaking authority and its authority to reclassify areas based on air quality under §§ 301(a) and 181(b)(2) of the Clean Air Act. Petitioners argue EPA violated the clear dictates of the Clean Air Act by declining to rely on § 179(c) to make this nonattainment finding, which would have triggered attainment planning provisions under § 179(d). We have subject matter jurisdiction to review a local or regionally applicable final EPA action under 42 U.S.C. § 7607(b)(1). Constitutionally, our jurisdiction is also contingent on Petitioners having standing to bring this action. Petitioners fail to satisfy the redressability requirement for standing. We therefore have no jurisdiction to review this appeal. We dismiss the petition.

An organization has standing to bring an action on behalf of its members if the suit does not require its members' direct participation; the suit seeks to protect interests that are germane to the organization's purpose; and members would have

standing to sue individually. *See Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977). Petitioners' lawsuit does not require its members' participation. It seeks to advance Petitioners' organizational mission to protect the environment. For individual members to have standing to sue, Petitioners must show their members have suffered a concrete and particularized injury; that the injury is fairly traceable to the challenged EPA action; and that it is likely, as opposed to merely speculative, that a favorable decision will redress that injury. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). The burden of establishing these elements of standing is Petitioners. *Id.* at 561.

Petitioners fail to demonstrate how compelling EPA to rely on § 179(c) to make a one-hour ozone nonattainment determination, thereby triggering the attainment provisions in § 179(d), would result in the San Joaquin Valley and South Coast air basins implementing more stringent anti-pollution measures or attaining the one-hour ozone standard more expeditiously. When EPA determined the areas had failed to attain the one-hour standard, it ensured that anti-backsliding measures would remain in effect and required the state to submit new attainment plans. The plans California has submitted for the two nonattainment areas commit the state to implementing all feasible ozone control measures and to attaining the one-hour standard as expeditiously as practicable. Petitioners fail to show how

3

requiring the nonattainment areas to implement plans in accordance with § 179(d) will cause these areas to attain the one-hour ozone standard faster than they will under the current plans. To the contrary, remanding to the EPA to re-issue its nonattainment determinations pursuant to § 179(c) would further delay the attainment process and, possibly, the deadlines for these areas to attain the one-hour ozone standard. Promulgating a nonattainment determination pursuant to § 179(c) would not result in these areas attaining the one-hour ozone standard more expeditiously.  Requiring EPA to take such action would not redress Petitioners' health and aesthetic injuries.

**PETITION FOR REVIEW DISMISSED.**

[1]

---

[1] Motion to take Judicial Notice filed on December 16, 2015 by Respondent-Intervenor is GRANTED.

*Medical Advocates for Healthy Air v. U.S. E.P.A.*, No. 12-70630

Christen, Circuit Judge, concurring:

I agree with the majority that the petition should be denied, but I reach that result in a different way.

I conclude, contrary to the majority's position, that petitioners established the "irreducible constitutional minimum" of Article III standing. *See Bennett v. Spear*, 520 U.S. 154, 167 (1997). EPA argues that petitioners lack standing because they cannot demonstrate redressability. According to EPA, petitioners' requested relief (remand with direction to make a section 179 finding) will extend the attainment deadline for the South Coast and San Joaquin Valley because a section 179(c) finding will restart section 172(a)(2)(A)'s ten-year deadline. *See* 42 U.S.C §§ 7509(d), 7502(a)(2)(A). The majority concludes that petitioners lack standing. It reasons that petitioners failed to explain how a remand from our court "would result in the San Joaquin Valley and South Coast air basins implementing more stringent anti-pollution measures or attaining the one-hour ozone standard more expeditiously."

I agree that a remand could give the basins even more time to attain the one-hour standard, but petitioners also argued before the Agency and in our court that applying section 179(c) would require California to develop *substantively* stricter

1

plans. For example, petitioners argued before the Agency "that section 179 does not permit the use of section 182(e)(5) [new technology] measures." 79 Fed. Reg. 52,526, 52,531 (Sept. 3, 2014). And in its briefing to our court, petitioners explained that "EPA's refusal to comply with the strict mandates of the Act has allowed . . . harmful conditions to persist by permitting the air districts to adopt plans that are weaker than those required by the Clean Air Act." A comparison between the statute (which governed pre-revocation SIPs) and EPA's regulation (which governs post-revocation SIPs) lends support to petitioners' argument. *Compare* 42 U.S.C. § 7410 (listing requirements for a SIP revision that follows from a section 179(c) finding of failure to attain), *with* 40 C.F.R. §§ 51.905, 51.900(f) (listing requirements for a SIP revision that follows from a section 301 finding of failure to attain a revoked standard). In my view, petitioners' contention that remand would produce substantively more protective SIPs is enough to establish redressability. In other words, I am persuaded by petitioners that they made a sufficient showing of redressability because even if remand for application of section 179(c) might technically give the districts more time to attain, it would also require California to develop substantively stricter plans that would ultimately produce cleaner air. *See Wash. Envtl. Council v. Bellon*, 732 F.3d 1131, 1139 (9th Cir. 2013) (petitioners must show that their "injury is *likely* to be redressed by a

2

favorable court decision" (emphasis added) (citing *Lujan v. Def. of Wildlife*, 504 U.S. 555, 560–61 (1992))).

EPA also argues that petitioners' lawsuit is untimely, but this is clearly not the case. EPA revoked the one-hour standard in 2004, and, as part of this rulemaking, it stated it would not make section 179(c) failure-to-attain findings for the revoked standard. *See* 40 C.F.R. § 51.905(e)(2)(i)(A) (2006 ed.). The D.C. Circuit "vacate[d] those portions of the 2004 Rule [40 C.F.R. § 51.905 (2006 ed.)] that . . . allow backsliding," in *South Coast Air Quality Management District v. EPA (SCAQMD)*, 472 F.3d 882, 905 (D.C. Cir. 2006). The D.C. Circuit left it up to EPA to determine what provision it should use to trigger the anti-backsliding measures once an area fails to attain. *Id.* at 902. It was therefore reasonable for petitioners to read *SCAQMD* as reinstating EPA's obligation to trigger these measures with a section 179(c) finding. *See* 42 U.S.C. § 7509(c)(1) (section 179(c) providing for "[n]otice of failure to attain"); *id.* § 7511d(a) (anti-backsliding provision that triggers on failure to attain); *id.* § 7502(c)(9) (same). Petitioners could not have known that EPA intended to rely on section 301 until EPA issued the December 30, 2011 Determinations Rule, *cf. Sierra Club de Puerto Rico v. EPA*, 815 F.3d 22, 27–28 (D.C. Cir. 2016) (explaining when a claim under the CAA ripens), and petitioners challenged *that* rule within sixty days of its

publication in the Federal Register. Petitioners' challenge was therefore timely. *See* 42 U.S.C. § 7607(b).

That leaves the merits. This case is, at its core, a *Chevron* case, and in my view, the petition must be denied because EPA reasonably interpreted an ambiguous statute. *See Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842–43 (1984). The Clean Air Act does "not directly address[] the precise question at issue," *id.* at 843, that is, whether EPA was required to use section 179(c) to trigger the Act's anti-backsliding provisions after it revoked the one-hour standard. Section 179(c) does not say whether it applies to a revoked standard. *See* 42 U.S.C. § 7509(c). Sections 185(a) and 179(c)(9) (the relevant anti-backsliding measures) are likewise silent: both provisions trigger when an area "fails to attain," 42 U.S.C. § 7511d(a); 42 U.S.C. § 7502(c)(9), but neither states that EPA must make the "failure to attain" finding under section 179(c). Because the statute is ambiguous, we must defer to EPA's interpretation of it as long as that interpretation was "permissible." *Chevron*, 467 U.S. at 843. I am persuaded that it was.

EPA invoked its general rulemaking authority under the Clean Air Act as the statutory basis for its finding that the South Coast and San Joaquin Valley failed to attain the revoked one-hour standard. *See* 76 Fed. Reg. 82,133 (Dec. 30, 2011)

(final rule); 76 Fed. Reg. 56,694, 56,701 (Sept. 14, 2011) (proposed rule citing section 301(a), 42 U.S.C. § 7601(a)). That provision gives EPA broad authority "to prescribe such regulations as are necessary to carry out [its] functions under this chapter." 42 U.S.C. § 7601(a)(1). As the D.C. Circuit explained in *SCAQMD*, one of EPA's essential functions is to "determine its procedure" for triggering the Act's anti-backsliding provisions. 472 F.3d at 902. No one disputes that EPA's finding under section 301 served this purpose. Particularly in light of our recent reminder that "[t]he only remaining requirements as to the one-hour NAAQS are the anti-backsliding limitations," *Nat. Res. Def. Council v. EPA*, 779 F.3d 1119, 1125 (9th Cir. 2015) (citation omitted), EPA's decision to make an attainment finding under section 301(a) for the limited purpose of triggering the anti-backsliding provisions in sections 185(a) and 179(c)(9) was reasonable.